ALPHONSE LOSADA *v.* SENESE MANUFACTURING
COMPANY, INC.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 2, 1952—decided January 20, 1953

*Alvin M. Murray,* with whom, on the brief, were *Alexander Winnick* and *Milton Rice,* for the appellant (defendant).

*Samuel E. Friedman,* with whom, on the brief, was *Arthur Levy, Jr.,* for the appellee (plaintiff).

INGLIS, J. Inasmuch as the finding of subordinate facts is not subject to correction, the sole question raised on this appeal is whether those facts support the conclusion that the plaintiff is entitled to recover a commission on orders received by the defendant.

The subordinate facts found may be summarized as follows: The plaintiff has been, since before 1945, a manufacturers' representative engaged in procuring orders on a commission basis. The defendant corporation was organized in 1946 and Ozzie Senese was its president until some time in 1950. Its principal business is the manufacture of screw machine parts. Ozzie Senese, as its agent, orally agreed that the plaintiff would receive, as compensation for his services, a commission of 10 per cent of the gross business which came to the company through his efforts. In the latter part of 1948 that agreement was substantiated by a letter signed by Ozzie Senese on behalf of the defendant and addressed to the plaintiff. It read: "The above named is a factory representative of the Senese Manufacturing Co. He is entitled to ten per cent commission of any work he is instrumental in acquiring for the company." The agreement has never been revoked.

During the spring of 1950, Peter Madaloni requested the plaintiff to procure a manufacturer to make motors for walking dolls. The defendant was not in a position to manufacture the entire motor but could supply necessary screw machine parts for it. The plaintiff consulted Senese and as a result changes in the design of the motor were suggested, favoring, wherever possible, the use of screw machine parts instead of power press parts. Thereafter, the order for the manufacture of the motors was given to the Universal Metal Stamping Company, and upon this order the plaintiff claims that

he is entitled to a commission from Universal. Through the efforts of the plaintiff, the defendant secured an order from Universal for all of the screw machine parts which were to be used in the manufacture of the motor. This service was rendered by the plaintiff in the expectation of receiving a commission of 10 per cent on the business obtained.

While Universal and the defendant were engaged in the manufacture of the motors, the plaintiff assisted both by carrying parts back and forth and by participating in discussions dealing with changes in design. During 1950, Ozzie Senese withdrew from the defendant corporation. Thereafter, the plaintiff asked Al Senese, secretary-treasurer of the defendant, how many parts it had made for Universal. The plaintiff's purpose in asking was to ascertain how much the defendant owed him and also how much was due him from Universal. Al Senese refused to give the information. The total amount of the sales from the defendant to Universal pursuant to the order obtained by the plaintiff was $31,599.95, but the defendant has refused to pay the plaintiff any commission on that account.

On the foregoing facts, the court concluded that it was the plaintiff who procured the order for the defendant, that he rendered the service in the expectation of receiving a 10 per cent commission in accordance with the agreement between him and the defendant, which was still in effect, and that, therefore, he is entitled to a commission of $3160.

The defendant contends that these conclusions were unwarranted for two reasons. It is claimed in the first place that the court could not reasonably conclude that the plaintiff's services were rendered pursuant to the defendant's agreement to pay him a commission. This is grounded upon the fact that a

long period had elapsed between the time the defendant had agreed to pay a commission and the time when the services were rendered and also upon the claimed fact that in procuring the order the plaintiff appeared to be acting solely for the benefit of himself, Madaloni and Universal. The short answer to this is that the whole matter was one of fact for the trier to decide. The defendant's agreement to pay commissions continued in force for a reasonable time or until it was revoked either expressly or by reasonable implication from the circumstances. 12 C.J.S. 44, § 16; 8 Am. Jur. 1006 § 35. There was no express revocation. It was within the province of the trier to determine whether under all of the circumstances the lapse of time had been unreasonable or had brought about an implied revocation. The court was warranted in its conclusion that the agreement had not been terminated. Likewise, the fact that the plaintiff had, as another motive for placing the order with the defendant, a desire to get the doll into production for the benefit of Madaloni and Universal does not necessarily exclude the probability that he was expecting a commission from the defendant on the order or that the service was rendered under such circumstances that the defendant should have realized that the plaintiff was procuring the order pursuant to the contract between them.

The second contention of the defendant is that the contract between the parties was too indefinite to form a basis for the court's conclusions. This claim is based upon the fact that the letter which the defendant gave the plaintiff provided for a commission on "any work" which the plaintiff was instrumental in procuring. The use of the word work, it argues, could mean that the amount of the commis-

sion was to be figured either on the total price of the parts manufactured or only on the cost of the labor that went into them. Whatever force there might have been to this argument is overcome by the fact that the court considered the writing as merely evidential of the oral contract between the parties. It was the oral contract upon which the conclusions of the trier were based. The oral contract provided for a commission on the "gross business" which might come to the defendant through the defendant's efforts. There is no uncertainty in the phrase "gross business." On the whole, therefore, we cannot say that the court acted unreasonably in reaching the conclusion that the plaintiff was entitled to his commission.

There is no error.

In this opinion the other judges concurred.