ARMAND BEAUCAR, EXECUTOR (ESTATE OF HUBERT A. PONS) *v.* BRISTOL FEDERAL SAVINGS AND LOAN ASSOCIATION

FILE No. CV 17-6710-5542

ARMAND BEAUCAR, EXECUTOR (ESTATE OF HUBERT A. PONS) *v.* BRISTOL SAVINGS BANK

FILE No. CV 17-6710-5592

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued June 2—decided August 29, 1969

*George D. Royster, Jr.,* of Hartford, with whom, on the brief, was *James E. Hayes,* of Bristol, for the appellant (plaintiff).

*Richard H. Alden,* with whom, on the brief, was *Richard D. Gilland,* both of Bristol, for the appellees (defendants).

Kosicki, J. These two causes of action were brought on separate complaints presenting the same issues of law and alleging some basically identical facts. They were tried together by agreement of the parties and order of the court. From a judgment for the defendant in each case the plaintiff has appealed. The appeals have been combined, and therefore only one opinion of this court will suffice for the disposition of both cases. Practice Book § 606; Maltbie, Conn. App. Proc. § 124.

Upon adequate and sufficient evidence, the court found the following facts, which are not subject to any corrections which would materially affect the judgment reached. Armand Beaucar is the duly appointed executor of the estate of Hubert A. Pons. In January, 1966, Pons was the duly appointed conservator of his wife, Mary A. Pons, who was incompetent and confined to a convalescent home. Prior to January, 1966, and continuing to the date of his death, Hubert A. Pons was the joint owner of a bank account in the Bristol Federal Savings and Loan Association, passbook No. S5103, and of another such account in the Bristol Savings Bank, passbook No. 61484. Both accounts were in survivorship with his wife, Mary A. Pons. On January 27, 1966, Hubert A. Pons was admitted to the Bristol Hospital on an emergency basis. He was then eighty-four years of

age and suffering from pneumonia, diabetes mellitus, cerebral arteriosclerosis, hardening of the arteries and poor eyesight. He remained there until February 11, 1966. Thereafter, he was transferred to the Farmington Convalescent Home, where he remained until the day of his death. On January 31, 1966, Hubert A. Pons, while a patient in the hospital, signed in duplicate a power of attorney prepared by his attorney, Louis Hanrahan. The only persons present in his hospital room at the time of execution of the document, in duplicate, were his nephews, Armand Beaucar, who as executor is the plaintiff and who signed as a witness, and Raymond Beaucar, who took Pons's acknowledgment. A niece, Dorothy F. Beaucar, sister of Armand, was named as the attorney in fact in this document. Neither of the nephews had inquired of Pons's attending physician or the nurses at the hospital as to Pons's competency to execute a power of attorney.

The trial court could credit the expert testimony of Dr. Nicholas J. Seguljic, who had attended Hubert A. Pons as his personal physician for several years and treated him during his confinement at the Bristol Hospital, that on January 31, 1966, Pons was confused, incompetent, unable to manage his own affairs and not in his right mind to make a decision.

Armand Beaucar delivered the executed powers of attorney to his sister, Dorothy F. Beaucar, approximately one week after they were signed. Dorothy F. Beaucar placed the powers of attorney in a metal box which she kept in her home. Shortly before November 3, 1966, Dorothy F. Beaucar caused photostat copies of the powers of attorney to be made at her place of employment. On the evening of November 3, 1966, Dorothy F. Beaucar, accompanied by Raymond Beaucar, presented Bristol Savings Bank passbook No. 61484 to a teller together with a copy of the power of attorney and requested

the withdrawal of the sum of $7101.49 from this account. She did not sign a written withdrawal slip as required by bank rules. Bristol Savings Bank passbook No. 61484 indicated a joint account in survivorship in the names of Hubert A. Pons and his wife, Mary A. Pons. The teller of the Bristol Savings Bank, after conferring with her supervisor, told Dorothy F. Beaucar that a Probate Court certificate of the appointment of Hubert A. Pons as conservator of the estate of Mary A. Pons was necessary before any withdrawal could be made. Dorothy F. Beaucar left the bank and never returned to request a withdrawal.

After leaving the Bristol Savings Bank, Dorothy F. Beaucar, accompanied by Raymond Beaucar, proceeded to the Bristol Federal Savings and Loan Association, where she presented Bristol Federal Savings and Loan Association passbook No. S5103 to a teller together with a copy of the power of attorney and requested the withdrawal of the sum of $5508.07 from the account. She did not sign a written withdrawal slip as required by bank rules. Bristol Federal Savings and Loan Association passbook No. S5103 indicated a joint account in survivorship in the names of Hubert A. Pons and his wife, Mary A. Pons. The teller of the Bristol Federal Savings and Loan Association, after conferring with a bank officer, told Dorothy F. Beaucar that no withdrawal could be made until legal advice could be secured by the bank. Dorothy F. Beaucar left the bank and made no further effort to withdraw these funds.

Hubert A. Pons died on November 18, 1966. The defendant banks were first notified of the plaintiff's claims through letters signed by his attorney on September 13, 1967. Pons left a will in which Armand Beaucar, Raymond Beaucar and Dorothy F. Beaucar were named as beneficiaries.

The trial court concluded from the foregoing facts, which were sustained by the evidence, that (1) On January 31, 1966, Hubert A. Pons was confused, incompetent, unable to manage his affairs and not in his right mind to make a decision, and, accordingly, no authority or agency was granted on that date to Dorothy F. Beaucar; (2) on November 3, 1966, fifteen days before the death of Hubert A. Pons, Dorothy F. Beaucar had no authority to withdraw any moneys from the defendant banks; (3) the plaintiff had failed to sustain his burden of proving by a fair preponderance of evidence that Dorothy F. Beaucar had authority to make withdrawals from the defendant banks on November 3, 1966, as claimed in the complaints; and (4) the defendants sustained their burden of proof with regard to the special defense of the incompetency of Hubert A. Pons on January 31, 1966.

In his assignments of error, the plaintiff claims that the court erred in its failure to correct the finding as requested by him, in reaching the conclusions stated, and in rendering judgment for the defendant in each case when the conclusions arrived at by the court do not support it. The first assignment, claiming errors apparent on the face of the record, we disregard. The plaintiff has failed to follow the procedure set out in Practice Book § 959. Furthermore, the assignment avers a question of law which can only be determined on the facts as found after trial and cannot be decided by a mere examination of the pleadings and the actions taken or the rulings made by the trial court in advance of trial. See, e.g., *State* v. *Sul*, 146 Conn. 78, 83.

In considering whether the court erred in failing to correct the finding in accordance with the plaintiff's motion to correct, we cannot overlook the irregular procedure followed by the plaintiff. As

pointed out by the defendants, the plaintiff had filed no transcript of evidence with his original motion to correct, as required by our rules. Practice Book § 981. After the motion was denied, the plaintiff filed his assignment of errors but did not file, at the same time, a transcript of such evidence as was relevant and material to the issues on appeal. Practice Book §§ 960, 963. The deficiencies in procedure, however, were partially cured by a later filing of the evidence, by a second motion to correct, which was denied, and by an order of the court extending the time, for each of the parties, for the filing of briefs on appeal. We, therefore, consider the appeal on the merits.

The initial ground of appeal is that the court erred in refusing to correct the finding by including facts claimed by the plaintiff to have been admitted or undisputed and by striking paragraphs claimed to be facts found without evidence. Corrections of findings may not be made on the first ground unless it is clearly established that the fact claimed was admitted or undisputed. "That a witness testified to a fact without direct contradiction is not of itself sufficient; the trial court must be the judge of the credit to be given to a witness." Practice Book § 628 (a); *State* v. *Coulombe,* 143 Conn. 604, 609; *Trenchard* v. *Trenchard,* 141 Conn. 627, 631; *Armstrong* v. *Watrous,* 138 Conn. 127, 128.

The second claim of error is addressed to the conclusions of the court. The court could reasonably reach those conclusions on the basis of the applicable law and the subordinate facts found. The court was not in error in denying the motion to strike the paragraphs attacked.

The facts which the plaintiff seeks to have added to the finding are supported solely by hearsay testimony. They are based on alleged conversations of the plaintiff's decedent with his niece, Dorothy F.

Beaucar, and his nephew, Raymond Beaucar. They were admissible in evidence as declarations of a deceased person. General Statutes § 52-172. Such evidence must be examined with care, and the weight accorded to it is for the trier to decide. *Joanis* v. *Engstrom,* 135 Conn. 248, 251. The court could properly take into account that the testimony with respect to this evidence came from two financially interested witnesses. "The trial court is at liberty to discredit any witness or a multitude of witnesses, if it deems that it has cause to do so." *Antenucci* v. *Hartford Roman Catholic Diocesan Corporation,* 142 Conn. 349, 357.

The plaintiff also seeks corrections in the finding by adding ultimate conclusions of fact to the subordinate facts found. A finding that Dorothy F. Beaucar had "apparent authority" to withdraw funds from the two savings accounts is not an admitted or undisputed fact. It is an important issue of law on this appeal. The conclusions of the trial court are only reviewable to the extent of determining whether they are a proper deduction from the subordinate facts. Maltbie, Conn. App. Proc. §§ 165, 166. The Appellate Division cannot properly find conclusions from subordinate facts and add them to the finding as admitted or undisputed facts. See Practice Book § 985. We cannot find that the trial court abused its discretion in declining to correct the finding by adding the asserted facts as requested.

The plaintiff attacks all the conclusions reached by the court in its finding on the ground that the subordinate facts found do not support them. Among the reasons given for this assignment which are specific enough to require our consideration are: (1) There was no testimony by either defendant as to Hubert Pons's competency on any date other than January 31, 1966; (2) the banks had a duty to pay

Dorothy Beaucar on November 3, 1966, regardless of Pons's competency on January 31, 1966; and (3) the banks had a duty to pay Dorothy Beaucar on November 3, 1966, regardless of Pons's competency on that date unless there was an adjudication of incompetency prior to November 3, 1966.

The plaintiff adopts the position that under General Statutes § 42a-4-405 (1) of our Uniform Commercial Code,[1] neither death nor incompetence of a customer revokes a payor bank's authority to accept or pay an account until the bank knows of the fact of death or of an adjudication of incompetency. In support of his claims of law recited above, the plaintiff cites, among other authorities and texts, *Romero* v. *Sjoberg,* 5 N.Y.2d 518, 523. The factual situation in that case was in its essential aspects the converse of that in the case before us. The plaintiff in that case sued the New York Savings Bank for withdrawals made from the account of his decedent by the named defendant, who acted under a power of attorney from the decedent. The court held that "[the bank's] duty of care to its depositors was performed when it acted on a duly authenticated power of attorney in proper form and on production of the passbook." Ibid. The plaintiff argues vigorously that in the instant case it was the duty of the banks to accept the proffered power of attorney as valid and to honor it by making withdrawals on the demand of Dorothy F. Beaucar.

---

[1] "Sec. 42a-4-405. DEATH OR INCOMPETENCE OF CUSTOMER. (1) A payor or collecting bank's authority to accept, pay or collect an item or to account for proceeds of its collection if otherwise effective is not rendered ineffective by incompetence of a customer of either bank existing at the time the item is issued or its collection is undertaken if the bank does not know of an adjudication of incompetence. Neither death nor incompetence of a customer revokes such authority to accept, pay, collect or account until the bank knows of the fact of death or an adjudication of incompetence and has reasonable opportunity to act on it."

We cannot accept the proposition posed by the plaintiff as the law which should govern the situation in this case. There are essential differences in the facts here and those present in *Romero.* The proffered power of attorney here was, on its face, broad and general in nature and not specific as in the cited case. There, the power had been presented by the defendant, together with the passbook and withdrawal slips, and honored by the bank on various occasions during the lifetime of the plaintiff's decedent. The defendant Sjoberg was specially authorized "to demand, sue for, and receive all debts, moneys, securities for moneys" to which plaintiff's decedent was or might become entitled, and to do anything in the premises as fully as the principal might or could do.

Although there have been no adjudicated cases in Connecticut, on the precise issues raised here, since the adoption of the Uniform Commercial Code in 1959, our Supreme Court in 1966 expressed itself on at least one point essential to the resolution of this case, that is, the relationship between the depositor and a mutual savings institution. It is not simply that of debtor and creditor, as the plaintiff contends. In *State* v. *Vars,* 154 Conn. 255, 262, the Supreme Court said: "With respect to the possessory interest retained by a depositor in a mutual savings institution, it is pertinent to note that, although deposits in an ordinary commercial bank create the relation of debtor and creditor between the bank and the depositor, and the money deposited becomes the property of the bank, which holds it not as the agent but as the debtor of the depositor, a different relation is created by a deposit in a mutual savings institution. Like savings banks, savings and loan associations are incorporated agencies without capital stock. Each is organized 'to accumulate the savings of its members and invest the same in mortgages, loans and

such other securities as are allowed by law.' General Statutes § 36-172 (a). The members of the association are those in whose names savings accounts are established; General Statutes § 36-172 (b); and although the association becomes in a sense the debtor of the depositor, 'it is also his agent since the depositor retains the equitable ownership of the deposit while transferring the legal title to the . . . [association] for the purpose of investing and conserving it for him.' *Alexiou* v. *Bridgeport-People's Savings Bank,* 110 Conn. 397, 400 . . . ." See also such cases as *Shippee* v. *Pallotti, Andretta & Co.,* 114 Conn. 560, 564; *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185; *Wood* v. *Connecticut Savings Bank,* 87 Conn. 341, 345.

The principal question raised is whether Dorothy Beaucar had authority to withdraw moneys from the defendant banks on November 3, 1966. The trial court concluded that no such authority or agency had been granted her by Hubert A. Pons, because of his incompetence. The court also concluded that the plaintiff had failed to sustain his burden of proving that she had such authority. These conclusions are to be tested by the subordinate facts found by the court, and not by the evidence. We do not retry facts. *Faiola* v. *Faiola,* 156 Conn. 12, 15. A finding of agency or lack of agency is a question of fact which must stand if supported by the subordinate facts found. *Cyclone Fence Co.* v. *McAviney,* 121 Conn. 656, 661; *Greenberg* v. *Lotz Asbestos Co.,* 109 Conn. 441, 450.

The burden of proving an agency relationship was on the plaintiff. *Iodice* v. *Rusnak,* 143 Conn. 244, 247. The plaintiff also had the burden of proving the nature and extent of the alleged agency relationship. 3 Am. Jur. 2d, Agency, § 348. A person who is not in a mental condition to contract and conduct his

business is not in a condition to appoint an agent for that purpose. 3 Am. Jur. 2d, Agency, § 12. One who is non compos mentis is incapable of executing a valid power of attorney. 3 Am. Jur. 2d, Agency, § 24.

The evidence and the inferences which could fairly be drawn therefrom supported the court's finding that the plaintiff's decedent was incompetent to execute a valid power of attorney on January 31, 1966. An examination of the document shows a signature which is vague, wavering, and totally unlike the signature of Pons as known to the banks from past transactions and their own records. That, in itself, was enough to put the defendants on notice that due care required further investigation by them before parting with the depositor's money. *Boardman* v. *Connecticut Savings Bank*, 133 Conn. 396, 401.

There was no evidence tending to show that the plaintiff's decedent had regained his competence subsequent to January 31, 1966, or ever took any action to ratify his signing of the document on that date. Unless Pons did recover from his lack of competence, it would be impossible for him to appoint Dorothy F. Beaucar as his attorney in fact, since he lacked capacity to appoint an agent. For Pons to ratify the act of appointing Dorothy F. Beaucar as his attorney in fact after January 31, 1966, it would have been necessary for him to use the same mode or form as was required to confer authority in the first place. 3 Am. Jur. 2d, Agency, § 163. The testimony concerning purported instructions of Pons on October 3, 1966, for Dorothy F. Beaucar to withdraw the money from the deposits in the defendant banks, even if believed, would have been insufficient for that purpose. 3 Am. Jur. 2d, Agency, §§ 31, 34.

The defendants in their special defense made the claim that, if valid, the power of attorney was re-

voked by failure to present it to the banks within a reasonable time. The court concluded that this defense, on the facts, was sufficiently proved by the defendants. The burden of proving the termination or revocation of an agency rests on the party asserting it. If no time is specified in the power of attorney, the authority terminates at the end of a reasonable period. Restatement (Second), 1 Agency § 105; 3 Am. Jur. 2d, Agency, § 35. What constitutes a reasonable time during which the authority continues is determined by the nature of the act specifically authorized, the formality of the authorization, the likelihood of changes in the purposes of the principal, and other factors. Restatement (Second), 1 Agency § 105, comment b. Whether the agency had expired by lapse of time is a question of fact for the trier to decide. It may determine "whether under all of the circumstances the lapse of time had been unreasonable or had brought about an implied revocation." *Losada* v. *Senese Mfg. Co.,* 139 Conn. 414, 417.

The trial court determined that there was an unreasonable delay in waiting for nine months before the power of attorney was presented and, therefore, there was an implied termination of it, if it was indeed valid in the first instance. We have discussed above the court's conclusion that it was not valid at the time of execution. The claim of the plaintiff that the document was valid and that its authority continued indefinitely appears untenable. No decisions have been cited for that proposition. The trial court concluded that the plaintiff had failed to sustain his burden of proving that assertion, and, under the circumstances appearing in evidence, that conclusion cannot be disturbed.

The suggestion of the plaintiff that even if Dorothy F. Beaucar had no express authority she had

apparent authority to withdraw funds which, under General Statutes § 42a-4-102 (1), the banks were under a duty to recognize is also of no avail to him. "The aim of the courts in formulating and developing rules as to apparent authority has been to protect, under proper circumstances, a third person in his dealings with an agent who lacks express authority." *Keeler* v. *General Products, Inc.*, 137 Conn. 247, 251. The plaintiff offered no evidence of prior transactions and made no claim of apparent authority, and the court could reasonably deny any correction in the finding not sustained by the facts found nor supported by the evidence. We have considered the other detailed claims made in the plaintiff's argument and brief and are of the opinion that, in view of the foregoing, no further discussion of them is necessary.

There is no error.

In this opinion DEARINGTON and KINMONTH, Js., concurred.