[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE SPECIAL DEFENSES AND COUNTERCLAIMS
In the first of the above-captioned actions, plaintiff Connecticut National Bank ("plaintiff") seeks foreclosure of a mortgage, dated March 3, 1988, to the plaintiff from Josephine Ealahan ("defendant") and in the second of the above-captioned actions, the plaintiff seeks foreclosure of a mortgage, dated October 6, 1988, to the plaintiff from the defendant.
The defendant filed identical answer, seven special defenses, ten-count counterclaim and three-count cross-complaint against co-defendant James Ealahan ("Mr. Ealahan") in each action and the plaintiff has moved to strike the special defenses and counterclaims in each action.
I. Facts
In its complaint in the first of the above-captioned actions, the plaintiff makes the following allegations. On February 3, 1988, defendant Ealahan Electric Company, Inc. ("Company") executed a commercial promissory note to the plaintiff in the amount of $200,000. As part of the consideration for such note, the Company, defendant, Mr. Ealahan and Diane S. Ealahan guaranteed payment of the note by virtue of a guaranty and endorsement agreement. On March 3, 1988, the Company executed a promissory note to the plaintiff in the amount of $250,000. As part of the consideration for such note, the Company, Mr. Ealahan, Diane S. Ealahan and the defendant guaranteed payment of the note by virtue of a guarantee and endorsement agreement, dated March 3, 1988, and a guaranty by individual, dated March 3, 1988. To secure her obligations, on March 3, 1988, the defendant executed the mortgage to the plaintiff which is the subject of the foreclosure sought in the first of the above-captioned actions. Such notes, guaranty and endorsement CT Page 9963 agreements, guaranty by individual and mortgage are in default and the plaintiff seeks, inter alia, foreclosure of the mortgaged premises, immediate possession of the premises, money damages, a judgment in strict foreclosure and a deficiency judgment.
The plaintiff has filed an amended complaint adding the allegation that Mr. Ealahan signed the name of the defendant to both the guaranty and the mortgage by virtue of a power of attorney, dated October 14, 1986, executed on behalf of the defendant in favor of Mr. Ealahan. The plaintiff attached a copy of the power of attorney to its amended complaint.
In the second of the above-captioned actions, the plaintiff makes similar allegations with reference to a $200,000 commercial promissory note executed by the Company to the plaintiff on October 6, 1988, and secured by the guaranty by individual, dated March 3, 1988. In addition, the plaintiff alleges that to secure her obligations, on October 6, 1988, the defendant executed the mortgage to the plaintiff which is the subject of the foreclosure sought in the second of the above-captioned actions.
II. Motion to Strike
A motion to strike is a means by which to challenge the legal sufficiency of a pleading. Mingachos v. CBS, Inc.,196 Conn. 91, 108 (1985). A plaintiff may file a motion to strike a special defense or counterclaim. Nowak v. Nowak,175 Conn. 112, 116 (1978). A motion to strike shall separately set forth each claim of insufficiency and "shall distinctly specify the reason or reasons for each such claimed insufficiency." Practice Book Section 154.
A motion to strike "must rely wholly upon the factual allegations of the pleading addressed and may not contain affirmative factual allegations which could only be proved by evidence." State v. Bashura, 37 Conn. Sup. 745,748 (1981). If facts provable under the allegations would support a claim or defense, then the motion to strike must fail. Alarm Applications Co. v. Simsbury Volunteer Fire Co.,179 Conn. 541, 545 (1980). However, a pleading is subject to a motion to strike if its allegations are merely conclusions of law absent sufficient alleged facts to support them. CT Page 9964 Cavallo v. Derby Savings Bank, 188 Conn. 281, 285 (1982).
III. Special Defenses
A. First Special Defense — Lack of Consideration
The defendant alleges in her first special defense that she is not liable under the guaranty because she received no consideration for it. The plaintiff argues that this is not a valid defense because the enforcement of a guaranty is dependent upon reliance, not consideration.
In support of its contention, the plaintiff cites Superior Wire Paper Products, Ltd. v. Talcott Tool 
Machine, Inc., 184 Conn. 10 (1981). In Superior Wire, the defendant argued that a guaranty was unenforceable because it lacked consideration. The court stated that "(e)ven if we were to overlook the modern law of contracts, which makes guaranties enforceable on the basis of reliance; see Restatement (Second), Contracts Section 89c (Tent. Ed. 1973); we would have no difficulty in finding consideration to have been bargained and given in this case." Id., 20. The court found that the defendants contemplated that their letter of guaranty would induce further shipments by the plaintiff which constituted bargained for consideration.
The Superior Wire court did not adopt the "modern law of contracts" interpretation it referred to, but, instead, based its holding on the ground that there was consideration to support the guaranty at issue. Furthermore, since the decision in Superior Wire, the appellate courts of Connecticut have yet to adopt the "modern law of contracts" interpretation.
Therefore, lack of consideration may remain a viable defense to an action on a guaranty and the plaintiff's motion to strike the first special defense must be denied.
B. Second Special Defense — Lack of Authorization
The defendant asserts in her second special defense that she is not liable on the guaranty and the mortgage because she did not authorize the execution of these documents. The plaintiff claims that this defense must be stricken because the defendant executed her power-of-attorney CT Page 9965 to Mr. Ealahan without limiting language and the defendant is bound by any action taken by Mr. Ealahan within his apparent authority.
The defendant argues that Mr. Ealahan did not have apparent authority because the circumstances surrounding the transaction were sufficient to alert the plaintiff to the possibility that he did not have the authority to bind the defendant in such transactions. One factor which should have alerted the plaintiff, the defendant argues, is that the power of attorney executed by the defendant on October 14, 1986, was used by Mr. Ealahan two years later to sign the defendant's name to the documents at issue.
"A written power of attorney constitutes a formal contract of agency and creates a principal-agent relationship." Bank of Montreal v. Gallo, 3 Conn. App. 268,273 (1985). The principal is bound by the acts of his agent which are within the scope of his actual or apparent authority and the scope of the agent's authority is defined by the power of attorney. Id.
"If no time is specified in the power of attorney, the authority terminates at the end of a reasonable period." Beaucar v. Bristol Federal Savings Loan Assn., 6 Conn. Cir. Ct. 148, 159 (1969), citing Restatement (Second) 1 Agency Section 105. "Whether the agency had expired by lapse of time is a question of fact. . . ." Id. Furthermore, the nature and extent of an agent's authority is a question of fact. Bank of Montreal v. Galla, supra, 273.
The determination of whether Mr. Ealahan was acting without the defendant's authorization is a question of fact and, accordingly, the plaintiff's motion to strike this defense must be denied.
C. Third Special Defense: Duress
The plaintiff argues that the defendant's third special defense, which claims that the instruments alluded to in the complaint were obtained from the defendant by duress, is legally insufficient because it does not allege any facts, but asserts mere conclusions of law.
In order to plead duress as a special defense, the CT Page 9966 defendant must plead facts which show that the plaintiff has no cause of action. Practice Book Section 164. Mere conclusions of law, absent sufficient factual allegations to support them, are subject to a motion to strike. Cavallo v. Derby Savings Bank, supra, 285.
The defendant's third special defense must be stricken because it does not allege any facts to support the legal conclusion alleged.
D. Fourth Special Defense: Lack of Knowledge
The defendant asserts in her fourth special defense that the instruments alluded to in the complaint are void and unenforceable because she was never informed of their character and was without knowledge of their essential terms.
The plaintiff asserts that this defense must be stricken on the ground that it does not state a valid defense because the defendant signed a power-of-attorney and notice to an agent while acting within the scope of his authority is notice to the principal.
The plaintiff's motion to strike the defendant's fourth special defense must be denied because the determination of the agent's scope of authority is an issue of fact.
E. Fifth, Sixth and Seventh Special Defenses: Fraudulent Inducement
In her fifth special defense, the defendant asserts that the instruments alluded to in the complaint were obtained by fraudulent inducement. In her sixth special defense, the defendant asserts that the plaintiff is barred from enforcing such instruments because it participated in such inducement directly or through its agents. In her seventh special defense, the defendant alleges that the plaintiff is barred from enforcing these instruments under the doctrine of unclean hands.
The plaintiff seeks to strike these three special defenses on the ground that they do not allege sufficient facts.
The defendant's fifth, sixth and seventh special CT Page 9967 defenses contain mere conclusions of law without sufficient facts alleged to support them and must be stricken.
IV. Counterclaims
A. First Count: Wrongful Use
The defendant alleges in the first count of her counterclaim that the plaintiff knew or should have known that the uses of the power of attorney were wrongful because the defendant did not authorize or consent to such uses, she was not informed of such uses and such uses were for the benefit of Mr. Ealahan, Diana Ealahan and the Company and not for the benefit of the defendant.
The plaintiff argues that this count should be stricken because it fails to state any cause of action. In response to the plaintiff's contention, the defendant argues that notice to an agent is not deemed notice to a principal where the agent is acting in fraud of the principal. The defendant has not submitted a response to the defendant's contention that the first count does not state a cause of action and, therefore, provides the court with no guidance as to what cause of action she is alleging in this count of her counterclaim.
Inasmuch as the plaintiff has not stated a cause of action recognizable under Connecticut law, the court must strike the first count of the defendant's counterclaim.
B. Second Counterclaim: Conspiracy
The defendant asserts in the second count of her counterclaim that the plaintiff conspired with Mr. Ealahan to use her assets as security for repeated borrowings by the Company from the plaintiff through frequent and unauthorized use of the power-of-attorney. The plaintiff seeks to strike this count on the ground that the defendant has pled no facts to support its claim for conspiracy.
In order to sustain a cause of action for conspiracy the claimant must plead: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant CT Page 9968 to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Williams v. Maislen,116 Conn. 433, 437 (1933). "[A]ccurately speaking, there is no such thing as a civil action for conspiracy but rather an action for damages caused by acts committed pursuant to a formed conspiracy." Benoit v. Amalgamated Local 299,150 Conn. 266, 276 (1963).
The defendant alleges in the second count of her counterclaim that Mr. Ealahan unlawfully executed a mortgage on her property to secure a loan from the plaintiff. The defendant alleges further that the plaintiff knew or should have known that such execution was unlawful and that the plaintiff conspired with Mr. Ealahan unlawfully to use her assets as security.
Because the defendant merely alleges that the plaintiff conspired with Mr. Ealahan, without alleging any facts to support the conspiracy claim, the defendant has not pled sufficient facts to sustain a cause of action for conspiracy and the second count of the counterclaim must be stricken.
C. Third Count: Tort
The defendant alleges in the third count of her counterclaim that the plaintiff was negligent in that it did not act in accordance with regular banking practices by granting loans to an insufficiently creditworthy borrower and by accepting, on numerous occasions, Mr. Ealahan's signature for the defendant as attorney-in-fact when Mr. Ealahan was not authorized to execute said documents in her name.
The plaintiff moves to strike this count on the ground that the defendant has failed to plead facts to support the existence of a duty the plaintiff owed to her. The plaintiff further asserts that, in a banking context, the common law precludes the existence of such a duty outside a contractual basis.
A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person would anticipate that harm of the general nature of that suffered was likely to result. Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375 (1982). The existence of a duty is CT Page 9969 a question of law. Petriello v. Kalman, 215 Conn. 377, 382
(1990).
The defendant has pled that the plaintiff gave a loan to a person who was not creditworthy and who used a power of attorney dated two years prior to the execution of the loan to execute a guaranty in the defendant's name in order to secure the loan. The defendant has alleged facts from which it may be found that circumstances exist under which a reasonable person would anticipate that harm of the general nature of that suffered was likely to result.
Accordingly, the plaintiff's motion to strike the third count of the defendant's counterclaim must be denied.
D. Fourth, Fifth and Sixth Counts: Exploitation
The defendant alleges in the fourth, fifth and sixth counts of her counterclaim that the violations alleged in the first, second and third counts, respectively, constitute exploitation of an elderly person as defined by General Statutes Section 17a-430(1). The plaintiff moves to strike these counts on the ground that General Statutes Sections 17a-430 to 17a-441 do not provide a private right of action for damages. Furthermore, the plaintiff argues these counts should be stricken because the alleged violations upon which they are based are not sufficient to give rise to a cause of action.
The issue of whether Section 17a-430 provides a private cause of action has yet to be addressed by the courts of this state.
The resolution of the issue of whether Section17a-430 et seq. provides a private cause of action requires a legal determination. As such, the resolution of this issue may not be made on a motion to strike. See Kelvin Corporation v. William Foley, d/b/a Wm. Foley Sons, Inc., 7 CTLR 64 (July 15, 1992, Lewis, J.).
Accordingly, the plaintiff's motion to strike the fourth, fifth and sixth counts of the defendant's counterclaim must be denied.
E. Seventh, Eighth and Ninth Counts: CUTPA CT Page 9970
In the seventh, eighth and ninth counts of the counterclaim, the defendant alleges that the plaintiff's actions as alleged in the defendant's first, second and third counts, respectively, violate the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes Sections 42-110a
and 42-110q. The plaintiff moves to strike these counts on the ground that the allegations in the first, second and third counts of the defendant's counterclaim do not violate CUTPA because they have no support in the common law.
The relevant provisions of CUTPA are as follows:
 Section 42-110b(a) No person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce.
 Section 42-110a(4) "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.
 Section 42-110g(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. Proof of public interest or public injury shall not be required . . .
In order to determine if a practice is unfair in violation of CUTPA, the courts have applied the following standard which has been deemed the "cigarette" rule:
 (1) [W]hether the practice, without necessarily having been previously CT Page 9971 considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80,105-106 (1992).
It is not necessary that the allegedly unfair practice meet all three of the above criteria, a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Id., 106.
Whether a practice is unfair under CUTPA is a question of fact. DeMotses v. Leonard Schwartz Nissan,22 Conn. App. 464, 467 (1990).
The defendant alleges in count seven of her counterclaim that, in order to secure a loan, Mr. Ealahan wrongfully executed documents in the defendant's name and that the plaintiff knew or should have known that such execution was wrongful. Furthermore, the defendant alleges that such practice is immoral, unethical and unscrupulous, and that such action caused substantial injury to the defendant.
The defendant alleges in count eight of her counterclaim that Mr. Ealahan wrongfully executed documents in her name, that the plaintiff knew or should have known that the documents were wrongfully executed, that the plaintiff and Mr. Ealahan conspired to use the assets of the defendant to obtain repeated loans, that such practice is immoral, unethical and unscrupulous and that such action caused substantial injury to the defendant.
The defendant alleges in count nine of her counterclaim that Mr. Ealahan wrongfully executed documents CT Page 9972 in her name, that the plaintiff knew or should have known that the documents were wrongfully executed, the plaintiff did not act in accordance with regular banking practices, that such practice is immoral, unethical and unscrupulous and that such action caused substantial injury to the defendant.
The determination of whether the plaintiff's actions violated CUTPA is ultimately a question for the trier of fact and viewing the defendant's allegations in their most favorable light, the defendant has pled legally sufficient causes of actions under CUTPA.
Accordingly, the motion to strike counts seven, eight and nine must be denied.
F. Tenth Count: RICO
The defendant alleges in the tenth count of her counterclaim that the plaintiff and Mr. Ealahan comprised an enterprise for the purpose of defrauding the defendant; that the plaintiff and Mr. Ealahan used the mails in furtherance of this enterprise; and that the plaintiff and Mr. Ealahan conspired to conduct the enterprise through a pattern of racketeering activity within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),18 U.S.C. § 1961(1)(B) and 1962(c). The plaintiff seeks to strike this count on the ground that the defendant has failed to allege sufficient facts to support such a claim.
In order for a party to set forth a viable claim for damages under RICO, the party must allege that the defendant committed two or more "predicate" acts which constitute a pattern of racketeering activity done in the conduct of the affairs of an enterprise. Celpaco, Inc. v. MD Papierfabriken, 686 F. Sup. 983, 987 (D.Conn. 1988). A violation of 18 U.S.C. § 1341, mail fraud, is a predicate act upon which a RICO claim may be made.18 U.S.C. § 1961.
In order to sustain a cause of action for mail fraud, the predicate act upon which the defendant in this case bases her RICO claim, the defendant must allege that the plaintiff knowingly used the mail in interstate commerce to further a scheme to defraud the defendant of money or property. United States v. Gelb, 700 F.2d 875, 879 (2d CT Page 9973 Cir.), cert. denied, 464 U.S. 853, 104 S.Ct. 167,78 L.Ed.2d 1152 (1983).
A claim is subject to a motion to strike if it asserts mere conclusions of law absent sufficient alleged facts to support them. Fortini v. New England Log Homes, Inc., 4 Conn. App. 132, 134-35 (1985). "The trial court may not seek beyond the complaint for facts not alleged, or necessarily implied . . ." Id., 135.
The defendant does not allege any facts to indicate that the plaintiff used the mails. Accordingly, the Court must grant the plaintiff's motion to strike the tenth count of the defendant's counterclaim.
V. Conclusion
For the reasons stated above, the Court grants the plaintiff's motion to strike the defendant's third, fifth, sixth and seventh special defenses, denies the plaintiff's motion to strike the defendant's first, second and fourth special defenses, grants the plaintiff's motion to strike the first, second and tenth counts of the defendant's counterclaim and denies the plaintiff's motion to strike the third through ninth counts of the defendant's counterclaim in each of the above-captioned actions.
Hendel, J.