MARGARET C. REARDON *v.* THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 6, 1951—decided January 29, 1952

*Cyril Coleman,* for the appellant (defendant).

*Robert P. Butler,* with whom was *Paul Volpe,* for the appellee (plaintiff).

INGLIS, J. This is an action brought by the beneficiary named in three life insurance policies to recover the double indemnity for which the policies provided in case of accidental death. The jury returned a verdict for the plaintiff which the court refused to set aside. On this appeal the defendant has assigned as error that ruling, various instructions contained in the charge and two rulings on evidence.

Upon the trial of the case it was undisputed that the plaintiff refused the demand for an autopsy made by the defendant. The principal contention of the defendant with reference to the verdict is that, upon the evi-

dence, the jury were bound to find that the demand was made within a reasonable time and that, therefore, the plaintiff's refusal, constituting, as it did, a breach of one of the conditions contained in the policies, defeated her right to the double indemnity. The following facts are undisputed: The plaintiff is the beneficiary named in three policies of insurance, in the total amount of $8500, issued by the defendant on the life of John F. Reardon, the plaintiff's husband. These policies provided that there would be paid to the plaintiff double the amount of their face value "upon receipt of due proof that . . . death resulted from bodily injury effected solely through external, violent, and accidental means, and occurred . . . within ninety days after such injury." This is the so-called double indemnity feature. In connection therewith, the policies also provided: "The Company shall have the right and opportunity to examine the body and to make an autopsy unless prohibited by law." There was also the provision: "No agent or other person except [certain named officers] has power on behalf of the Company to bind the Company by making any promises respecting benefits or accepting any representations or information not contained in the written application for this Policy, or to make or modify this contract, or to extend the time for payment of a premium, or to waive any lapse or forfeiture or any of the Company's rights or requirements." The policies had been sold to Reardon through Benjamin J. Davis, Sr., of Worcester, Massachusetts. His authority was "to represent The Mutual Life Insurance Company of New York for the purpose of soliciting insurance and annuities, collecting and remitting first premiums thereon, and servicing such insurance and annuities." The defendant maintained an office in Springfield, Massachusetts, and a branch in Worcester. Davis had his office in the Worcester office of the com-

pany. During the life of the policies Reardon had accomplished a change of beneficiary thereon through Davis as the agent of the defendant. Reardon died in the early morning of June 15, 1948, while the policies were in force.

In addition to the foregoing, the jury might reasonably have found the following facts: On April 3, 1948, in an automobile accident, Reardon sustained a severe injury to his knee which required an open surgical operation. His progress of recovery was normal until the evening of June 13, when the knee began to swell. On the morning of June 14 he became violently ill and was taken to a hospital. He died at 1:30 a.m. on the following day. The immediate cause of his death was a pulmonary embolism which was the direct result of the injury to his knee. It was the claim of the defendant that the cause of death was a cardiac insufficiency which bore no relation to the accident. Reardon, however, showed most of the characteristic symptoms of a pulmonary embolism, and his attending physician testified that that was the cause of his death. There was, therefore, evidence to support the jury's finding in that regard. *Fields* v. *Metropolitan Life Ins. Co.*, 132 Conn. 588, 590, 46 A. 2d 127. An autopsy would have been effective to determine the cause of death.

Before noon of the day of Reardon's death, his sister, at the request of the plaintiff, notified Davis by telephone of the death. She told Davis about the accident and the operation on the injured knee. She stated that the deceased had been coming along fine and that his family had felt much encouraged until his sudden death. On the afternoon of June 17, Davis and his son called at the Reardon home and talked with the deceased's son. They specifically inquired as to the cause of the death and were told that Reardon had been in an accident in April and had died of a pulmo-

nary embolism. Funeral services were held on the morning of June 18, with interment in New Hampshire in the afternoon of the same day. No request for an autopsy was made by anyone prior to that time.

On June 17 the Worcester office, and on June 18 the Springfield office, of the defendant had actual knowledge of Reardon's death. The proper form for proof of death was later forwarded by the company to Davis, and on June 21 he procured execution of it by the plaintiff. Because of a delay in finding the policies, the proof of death and the policies were not received at the Springfield office of the defendant until June 30. It was not until July 8, three weeks after the interment, that any intimation was given by the defendant that it desired an autopsy. On that day it made a request for an autopsy to the plaintiff and she immediately refused it.

Provisions for autopsies similar to that contained in the policies in suit are common in contracts insuring against accidental death. It is universally held that in order to take advantage of such a provision the insurer must make the demand for an autopsy within a reasonable time after the death of the insured. *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 426, 172 A. 777; *Howes* v. *United States Fidelity & Guaranty Co.*, 73 F. 2d 611, 612; *Johnson* v. *Bankers Mutual Casualty Ins. Co.*, 129 Minn. 18, 22, 151 N. W. 413; *Wehle* v. *United States Mutual Accident Assn.*, 153 N. Y. 116, 122, 47 N. E. 35; *Root* v. *London Guarantee & Accident Co.*, 92 App. Div. 578, 583, 86 N. Y. S. 1055, aff'd, 180 N. Y. 527, 72 N. E. 1150; 29 Am. Jur. 847, § 1129. Indeed, many cases have gone so far as to hold that the demand must be made before interment. *McCulloch* v. *Mutual Life Ins. Co.*, 109 F. 2d 866, 869; *Cantrall* v. *Great American Casualty Co.*, 256 Ill. App. 47, 60; *United States Fidelity & Guaranty Co.* v. *Hood*, 124 Miss. 548,

568, 87 So. 115; *Ewing* v. *Commercial Travelers' Mutual Accident Assn.*, 55 App. Div. 241, 244, 66 N. Y. S. 1056, aff'd, 170 N. Y. 590, 63 N. E. 1116.

Although we indicated by way of dictum in *Rinaldi* v. *Prudential Ins. Co.*, supra, that we might adopt the more strict limitation, we are convinced, upon reconsideration, that the time in which an insurer may demand an autopsy is not limited in all cases by the time of burial. Ordinarily, a proper regard for the sensibilities of the bereaved family will require that the demand be made before interment, and that factor must be given great weight in determining whether the insurer has used due diligence in making its demand. In cases, however, in which the insurer has not been put on notice of the probability that a claim of accidental death will be made until after the interment of the insured, the insurer ought not to lose its right simply because the body has been buried. In cases of this sort a request for an autopsy must be made by the insurer within a reasonable time after it is put on notice of the probability that the beneficiary will claim that the insured's death was due to accident. What such a reasonable time is must be determined in each case in the light of all the circumstances. *American Employers' Liability Ins. Co.* v. *Barr*, 68 F. 873, 877, 16 C. C. A. 51; *Gath* v. *Travelers' Ins. Co.*, 113 Ohio St. 369, 373, 149 N. E. 389; Vance, Insurance (3d Ed.) p. 993; see note, 88 A. L. R. 984, 986. Ordinarily that is a question of fact. *Maryland Casualty Co.* v. *Harris*, 60 F. 2d 810, 811; *General Accident Fire & Life Assurance Corporation* v. *Savage*, 35 F. 2d 587, 594; *Standard Accident Ins. Co.* v. *Rossi*, 35 F. 2d 667, 672.

To determine whether the defendant in the present case demanded an autopsy within a reasonable time, the jury had first to decide when it was that the defendant had notice of the beneficiary's claim that Reardon's

death was due to accident. They might reasonably have found that the telephone call to Davis on the morning of Reardon's death was sufficient notice of that fact to Davis. In that conversation Miss Reardon quite clearly intimated that in the minds of the family there was a causal relationship between the accident and the death. If that had not been sufficient, the response of Reardon's son to Davis' inquiry, on the afternoon of June 17, as to the cause of death should have clinched the matter. In other words, Davis knew at least twenty-four hours, and should have known more than seventy-two hours, before the interment that there was a probability that the insurer would be called upon for the double indemnity. The jury might also reasonably have found that Davis was the general field representative of the defendant and that the duty of servicing insurance written through him spelled out in the letter of his authorization included the procuring of proof of death and in general gathering information about claims. When an agent acting within the scope of his authority obtains knowledge of a fact relevant to the transaction in which he is engaged, ordinarily that knowledge is imputed to his principal. The knowledge of the agent is the knowledge of his principal. *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 548, 173 A. 783; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 393, 65 A. 134; *McGurk* v. *Metropolitan Life Ins. Co.,* 56 Conn. 528, 539, 16 A. 263; 2 Mechem, Agency (2d Ed.) p. 1397. This is true unless the agent in reality is acting adversely to or in fraud of his principal or in circumstances where it is apparent for other reasons that it is not probable that he will communicate the facts to his principal. *MacKay* v. *Aetna Life Ins. Co.,* supra, 550; *Resnik* v. *Morganstern,* 100 Conn. 38, 42, 122 A. 910. None of these exceptional conditions exists in the present case. Davis was not acting ad-

versely to or in fraud of the defendant. Under all of the circumstances, it was to be presumed that he would promptly communicate to the defendant such information as he acquired.

The defendant calls attention to the provision contained in each of the policies to the effect that no person other than an officer of the company has power to bind it by "accepting any representations or information not contained in the written application for this Policy." The immediate question before us is not whether the contract of insurance was modified by reason of the information coming to Davis. It is not whether the defendant was estopped to claim a breach of condition or whether it had waived the condition. It is simply whether the notice of an impending claim of accidental death received by Davis was notice to the defendant so as to start the running of the time in which it might demand an autopsy. The portion of the provision of the policy quoted obviously is intended to apply only to information obtained in connection with the taking of the application and issuance of the policy which might have a bearing on those conditions of the policy which define the risk assumed. See *Bernhard* v. *Rochester German Ins. Co.*, supra, 391. It does not refer to information coming to an agent after the death of the insured and in pursuance of his authorization to procure proof of death. It does not mean that knowledge so obtained is not to be considered as notice to the company. It, therefore, has no bearing upon the immediate question now before us. Accordingly, the jury might reasonably have found that the company had notice more than seventy-two hours before the burial that its insured's death was claimed to be accidental.

The jury were not charged that the defendant, if it desired an autopsy, must request it before the burial.

They were charged in broad terms that the question for them to decide was whether the defendant had made its demand within a reasonable time. Presumably they followed those instructions and concluded that, since the defendant had been put on notice on June 15, its request for an autopsy on July 8 was not made within a reasonable time. We cannot say under all of the circumstances that this conclusion of fact was not warranted. The conclusion having been reached, it follows that the plaintiff's refusal of the demand did not operate to forfeit her right to recover the double indemnity. The trial court was correct in denying the motion to set aside the verdict.

The defendant complains of the charge in four particulars. The first of these is that the court left to the jury the question whether Davis was the agent of the defendant so that notice of the claim of accidental death to Davis was notice to the company, instead of charging that as a matter of law he was not such an agent. In addition to those already outlined, the only claim of proof upon which the defendant relies in this connection is that the letter of authorization to Davis stipulated that he was not an employee of the defendant and stated: "[Y]ou shall determine as an independent contractor the persons from whom you will solicit insurance and annuities and the method, time, and place of performance under this contract." That this specification was in the contract between Davis and the company does not preclude the possibility that in procuring information as to the cause of Reardon's death Davis was acting as an agent. The plaintiff had no knowledge of the stipulation. She was not bound by it. Whether, in spite of the reference in it to "independent contractor," the defendant was actually using Davis as its agent to procure information concerning Reardon's death was a question of fact for the

jury to decide in the light of all the circumstances. The charge on the subject was correct.

A second criticism of the charge is that it submitted to the jury the question whether the defendant had waived the condition of the policy permitting an autopsy or was estopped to enforce it. Waiver had not been pleaded, and the defendant relies upon the rule that it must be pleaded to be availed of. *Fields* v. *Metropolitan Life Ins. Co.*, 132 Conn. 588, 592, 46 A. 2d 127. Estoppel in pais need not be pleaded; *Lebas* v. *Patriotic Assurance Co.*, 106 Conn. 119, 125, 137 A. 241; *Cupo* v. *Royal Ins. Co.*, 101 Conn. 586, 593, 126 A. 844; but the defendant is right in claiming that estoppel was not in the case. The real question was not whether the defendant had waived the provision of the policy or was estopped to claim a forfeiture by the plaintiff. It was rather whether the defendant had taken the necessary steps to put the condition into operation — whether, that is, the defendant had requested an autopsy within a reasonable time so that the condition would operate to defeat the plaintiff's right of recovery if she refused. It is true that in the charge the court defined both waiver and estoppel. At the same time, however, it informed the jury that neither was in the case. It then made plain that the real issue was whether the defendant had demanded an autopsy within a reasonable time. This was stated so clearly and emphatically that the jury could not have misunderstood. Consequently, the inclusion of the reference to waiver and estoppel could have done no harm.

The third claim of error is the charge on the question of the defendant's right to an autopsy. The law on the subject has been set forth in an earlier portion of this opinion. The charge stated that law accurately. This claim of error is without merit.

The last contention of the defendant with reference to the charge is that it, in effect, placed the burden of proof as to a breach of the condition relating to an autopsy upon the defendant. It had been affirmatively alleged in the answer that the plaintiff had not complied with that provision of the policy. The charge was that the party who affirmatively alleges a fact has the burden of proving it. The defendant bases its argument on the line of cases which hold that in a suit on an insurance policy the burden of proving compliance with the conditions of the policy rests upon the plaintiff even though the defendant in its answer has pointed out certain conditions which it claims have not been fulfilled. *Harty* v. *Eagle Indemnity Co.*, 108 Conn. 563, 565, 143 A. 847, and cases cited. In the present case, however, there had been no dispute on the evidence that the plaintiff had refused an autopsy. If an autopsy had been properly demanded, there would clearly have been a breach of the condition. As already pointed out, the only issue on this phase of the case was whether the defendant by making a demand for an autopsy within a reasonable time created a situation which would lead to a forfeiture of the plaintiff's rights under the policies if she refused to comply with the demand. Without proof of an effective demand, the condition was not in the case. For that reason the rule laid down in the line of cases just referred to is not applicable. The burden was upon the defendant to prove that it had taken the steps necessary to put the plaintiff in a position where she would have to make a choice between complying or refusing to comply with the condition. The court so charged the jury.

The rulings on evidence assigned as error are that the court admitted testimony of the telephone conversation between Reardon's sister and Davis and the talk

between Reardon's son and Davis. The basis of the objection to the admission of the testimony was that Davis was not the agent of the defendant. As has already been pointed out, there was evidence of the existence of such an agency. There is, therefore, no merit to these assignments of error.

There is no error.

In this opinion the other judges concurred.