## BANK OF MONTREAL *v.* GARY A. GALLO (2852)

Dupont, C.P.J., Borden and Daly, Js.

Argued November 8, 1984—decision released February 19, 1985

*Richard C. Stewart,* for the appellant-appellee (plaintiff).

*Raymond F. Ross,* for the appellee-appellant (defendant).

BORDEN, J. This is a creditor's suit in which the plaintiff sought to enforce a guaranty which was given by the grantee of a power of attorney, executed by the defendant. The trial court rendered judgment for the plaintiff in an amount of principal and interest which was less than the plaintiff sought under the guaranty. The plaintiff appealed,[1] claiming that the trial court erred in failing to render a judgment for the full amount of the guaranty. The defendant cross appealed, claiming that the judgment was contrary to the pleadings and relevant law, and that if the judgment is correct, the interest rate used was erroneous.

The facts are not in dispute. On October 15, 1973, the defendant executed a power of attorney authorizing Thomas G. Campbell to sign on the defendant's behalf, as the guarantor on a mortgage, and on any interim financing prior to obtaining the mortgage, for a specific piece of property in Montreal, Canada. The power of attorney left the details of the financing to Campbell's discretion, but limited the amount for which the defendant could act as guarantor to $70,000.[2]

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

[2] The pertinent portion of the document granting the power of attorney reads as follows: "I, Gary A. Gallo, M.D. . . . do hereby make, nominate,

In November, 1973, the plaintiff bank loaned $15,000 to Placements G.M.O., Inc. (Placements), a Canadian corporation. This loan was made on the basis of a guaranty signed by Campbell on the defendant's behalf and was for the purpose of renovating the designated property. The defendant was notified in advance, by mail, of this loan.

In the following months, the plaintiff made more loans to Placements.[3] On January 29, 1974, Campbell

constitute and appoint Thomas G. Campbell my true and lawful Attorney for me and in my name, place and stead and for my sole use and benefit to sign on my behalf as guarantor on a mortgage to be arranged on 3706-3710 St. Denise St., Montreal, Quebec, including any interim financing required prior to finalization of such mortgage arrangements. Details, rates and taxes of such mortgages and for related financing are to be arranged at Thomas Campbell's discretion. Total financing on this particular project not to exceed $70,000 and for all and every of the purposes aforesaid I do hereby give and grant unto my said Attorney full and absolute power and authority to do and execute all acts, deeds, matters and things necessary to be done in and about the premises, also to commence, institute and prosecute all actions, suits and other proceedings which may be necessary or expedient in and about the premises, as fully and effectually to all intents and purposes as I myself could do if personally present and acting therein; also to appoint a substitute or substitutes and such substitution at pleasure to revoke, I hereby ratifying and confirming and agreeing to ratify and confirm and allow all and whatsoever my said Attorney or such substitute or substitutes shall lawfully do or cause to be done in the premises by virtue hereof."

[3] The transcripts and exhibits indicate that, after the initial loan to Placements of $15,000, Placements' account was overdrawn at various times during December, 1973, and January and February, 1974. The proceeds of the loans made to Placements, for which Campbell executed guaranties in the defendant's name, were deposited into Placements' checking account to cover the overdrafts. Each time one of the loans was made, the previous note was considered "paid off," the prior notes and guaranty, if any, were destroyed or returned to Campbell, and a new note incorporating the unpaid principal due on the previous note was executed.

Specifically, on January 11, 1974, Placements had $16,293.93 in overdrafts, which, together with a loan balance of $15,000, totalled $31,293.93. On January 14, 1974, a loan for $32,000 was made by the plaintiff. On January 26, 1974, Placements had $21,221.66 in overdrafts, which, together with the loan of $32,000, totalled $53,221.66. On January 29, 1974, a loan for $55,000 was made. On February 25, 1974, Placements had $20,182.19 in

signed a guaranty in the defendant's name in the amount of $70,000, plus annual interest of 10½ percent.[4] The defendant was not notified of these loans or of the January guaranty signed in his name. That guaranty made no reference to the power of attorney, the property mentioned in the power of attorney or the purpose of the financing. It did refer to Placements. See footnote 4, supra. Placements was not mentioned in the power of attorney although it was in existence when the power of attorney was established.

overdrafts, which, together with the loan balance of $55,000, totalled $75,182.19. On February 26, 1974, a loan for $75,000 was made, based on the guaranty executed by Campbell in the defendant's name for all monies owed to the plaintiff by Placements up to $70,000. The defendant did not know of the overdrafts on Placements' account.

[4] The pertinent portion of the guaranty reads as follows: "In consideration of the Bank of Montreal dealing with Placements G.M.O. Quebec Inc. herein referred to as the Customer, the undersigned hereby jointly and severally guarantee(s) payment to said Bank of all present and future debts and liabilities direct or indirect or otherwise, now or at any time and from time to time hereafter due or owing to said Bank from or by the Customer, and whether incurred by the Customer alone or jointly with any other Corporation, person or persons, or otherwise howsoever: provided, however, that the liability of the undersigned and of each of the undersigned herein is limited to Seventy thousand Dollars, with interest thereon at 10½ per cent per annum from date of demand for payment of the same."

The defendant raises the question of the applicable interest rate on the cross appeal. This paragraph of the guaranty states that the interest rate is 10½ percent per year. There is a discrepancy, unnoted by the parties, between this rate and the interest rate indicated on the $75,000 note, which is 10¼ percent per year. The defendant, a guarantor on the note, may only be held liable to the limits of the guaranty signed in his name. The power of attorney left the determination of the interest rate to Campbell's discretion; see footnote 2, supra; and neither party argues that setting the interest rate on the guaranty was outside the scope of his agency. We leave it to the trial court to determine, in the first instance on the remand, whether the applicable interest rate on the defendant's principal liability, if any, is the rate specified in the guaranty or the lesser rate specified in the obligation which is guarantied.

In the same vein, the defendant's argument that the date of demand for payment was inappropriately used to determine the date the interest began to run is meritless. The defendant's liability depends on the guaranty, which specifies that the guarantor is liable for interest only from the date of demand for payment. The trial court did not err in using this date.

The defendant was neither a stockholder nor an officer of Placements; Campbell was its managing agent and secretary, and the signatory on its corporate checking account. The plaintiff had knowledge of these facts.

On January 24, 1975, after Placements defaulted on its loan of $75,000; see footnote 3, supra; the plaintiff demanded payment of $70,000 from the defendant. When the defendant refused to pay, the plaintiff sued him on the $75,000 note, relying on both the power of attorney and the guaranty of January 29, 1974.

The trial court found that the defendant owed the plaintiff only for the loan of $15,000, which it converted into $15,040.50 in American dollars, plus interest at the rate of 10½ percent, for a total judgment of $26,368.07. The court found that the power of attorney authorized Campbell, as the defendant's agent, to make financial arrangements for the specific property mentioned in the power of attorney and that the plaintiff was bound by its limits. The court extended its analysis further, however, and found that the power of attorney was an invitation to unspecified lenders to extend credit up to a fixed amount and for a specified obligation and was an offer of guaranty. It viewed the January, 1974 guaranty as a continuing one, entitling the defendant to reasonable notice of loans given in reliance on it. Insufficient notice of the loans or the financial condition of Placements was given to the defendant, the court found, to hold him liable to the full extent of the loans. It declined to impute Campbell's knowledge to his principal, the defendant, but found that the defendant was adequately notified of the initial $15,000 loan and was liable for that amount.

The plaintiff argues that the trial court erred in failing to give the proper legal effect to the power of attorney. We agree.

A written power of attorney constitutes a formal contract of agency and creates a principal-agent relationship. *Long* v. *Schull,* 184 Conn. 252, 256, 439 A.2d 975 (1981).[5] The principal in such a relationship is "bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal, and within the scope of the agent's employment . . . ." 3 Am. Jur. 2d, Agency § 261. " 'It is the general rule, settled by an unbroken current of authority, that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal.' ' . . . This assumes, however, that the agent is acting within the scope of his authority." *West Haven* v. *United States Fidelity & Guaranty Co.,* 174 Conn. 392, 395, 389 A.2d 741 (1978).

The scope of Campbell's authority was defined by the power of attorney. See *Long* v. *Schull,* supra, 256; see also *Brassert* v. *Clark,* 162 F.2d 967, 973 (2d Cir. 1947). The defendant, as principal, could limit the powers of his agent, and all parties who dealt with the agent knowing of the limitation were bound by its terms. *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 125, 374 A.2d 144 (1976).

The nature and extent of an agent's authority is a question of fact for the trier. *E. Paul Kovacs & Co.* v. *Alpert,* 180 Conn. 120, 126, 429 A.2d 829 (1980); 3 Am. Jur. 2d, Agency § 360. The parties do not dispute that Campbell was the defendant's agent pursuant to the power of attorney. *Brassert* v. *Clark,* supra, 973. The scope of Campbell's agency depended on the construc-

---

[5] Although this case involves a Canadian bank, a Connecticut resident, loans made in Montreal and a power of attorney signed in New York, we apply Connecticut law because that is the law on which the case was tried, and on which the appeal and cross appeal were based in this court. See *Todd* v. *Malafronte,* 3 Conn. App. 16, 18, 484 A.2d 463 (1984).

tion of the terms of the power of attorney, the purpose of the agency and the circumstances existing at the time of its creation. 2A C.J.S., Agency § 151. Whether the loans made to cover Placements' overdrafts came within the scope of the pre-mortgage interim financing contemplated by the power of attorney, and whether those loans were actually for the specific property mentioned in the instrument, are questions of fact which the trial court did not address but which will have to be addressed at the retrial.

The power of attorney authorized Campbell to guaranty a mortgage on the property or to guaranty "any interim financing required prior to finalization of . . . mortgage arrangements" or related financing. Discretion for such financing was left to Campbell. There was testimony from the defendant, that he knew of the existence of Placements when he signed the power of attorney, that he knew that Campbell managed Placements, and that one of the purposes of the formation of that corporation was to renovate the property mentioned in the power of attorney. He also testified that Campbell had indicated to him that Placements would be used as a vehicle to complete the renovation of that property. Additionally, there was evidence that the checks which created the overdrafts were payable to the contractors at the site mentioned in the power of attorney. This evidence would have supported a finding that the overdrafts which were covered by the plaintiff, the guaranty signed in the defendant's name and the ultimate loan were all within the scope of Campbell's agency, and that the defendant was therefore liable to the plaintiff. See *E. Paul Kovacs & Co.* v. *Alpert,* supra, 125.

The defendant urges us to find, as did the trial court, that he was relieved of liability because of lack of notice to him of the various loans and the guaranty. We decline to do so. As long as Campbell was acting within

the scope of his authority from the defendant, notice to Campbell constituted notice to the defendant, and lack of notice to the defendant was immaterial. *West Haven* v. *United States Fidelity & Guaranty Co.,* supra.

The knowledge of the agent is considered knowledge of the principal "unless the agent *in reality* is acting adversely to or in fraud of his principal or in circumstances where it is apparent for other reasons that it is not probable that he will communicate the facts to his principal." (Emphasis added.) *Reardon* v. *Mutual Life Ins. Co.,* 138 Conn. 510, 516, 86 A.2d 570 (1952). We find no evidence in this record to support a conclusion that Campbell acted adversely to or in fraud of the defendant, or that the plaintiff should have realized that he would not communicate with the defendant. The fact that Campbell created overdrafts on Placements' account which the plaintiff covered is not, as the defendant suggests, sufficient, nor is the fact, in and of itself, that Campbell was in control of Placements, the principal debtor, since the defendant knew that Placements would be used to renovate the property on which the defendant was to guaranty debts.

The court also erred in reading the power of attorney as an invitation to lenders to extend credit and as an offer of guaranty. The patent terms of the power of attorney created an agency in Campbell to execute certain guaranties and to negotiate the terms of credit agreements. See footnote 2, supra. There is no evidence to support a reading of it as an invitation to lenders to extend credit. The fact that discretion was left to Campbell to arrange the credit and sign the guaranties is insufficient to show that the power of attorney was intended as anything other than a grant of agency. Thus, the trial court's finding of the power of attorney as an invitation to lenders to extend credit or an

offer of guaranty was, in this case, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

We briefly address the plaintiff's claim that the court erred in failing to find ratification of the agent's acts, since this issue may recur at retrial.[6] We disagree with the defendant that ratification was not sufficiently alleged to allow recovery on that theory. The allegations of the pleadings must apprise the opposing party of the issues and claims to be made. *Board of Police Commissioners* v. *White,* 171 Conn. 553, 557, 370 A.2d 1070 (1976). We recognize that the specific facts required to establish ratification are somewhat different from those required to establish actual authority. *Botticello* v. *Stefanovicz,* 177 Conn. 22, 28, 411 A.2d 16 (1979). The question, however, of whether an agent's conduct was ratified by his principal is so closely intertwined with the question of whether his conduct was within the scope of his agency that alleging agency gives sufficient notice that the plaintiff may also rely on ratification of the agent's conduct. See *Schenck* v. *Pelkey,* 176 Conn. 245, 252–55, 405 A.2d 665 (1978); *Leabo* v. *Leninski,* 2 Conn. App. 715, 720–21, 484 A.2d 239 (1984). Ratification is a question of fact; *Botticello* v. *Stefanovicz,* supra, 28–29; which the trial court did not reach.

Because of our determination on the appeal, we address the issues raised by the defendant on the cross appeal only to the extent they are likely to recur at the new trial. The defendant's claim that he cannot be held liable for $15,000 since the action is based only on the $75,000 note is without merit. The method used to compute the loans in this case indicates that, after an exami-

---

[6] The issue might recur, for instance, if the court determines that Campbell's acts were outside the scope of his agency. The defendant would then only be liable if he ratified those acts. We do not suggest by reaching this issue that any of Campbell's acts exceeded the scope of his agency.

nation of the scope of Campbell's agency, the defendant may be held liable for those acts which were within the scope of the agency, up to a total of $70,000, plus interest at the applicable rate; see footnote 4, supra; and not for other acts. The defendant's liability, therefore, may be for the full amount of the guaranty or less, depending on whether all or only part of the advances covered by the ultimate note were within the scope of Campbell's agency. It need not be all or nothing.

We cannot conclude, moreover, that because the trial court held the defendant liable for the $15,000 loan, it found that only that loan was within the scope of the agency relationship. The trial court held the defendant liable on that loan because he had notice of it; it did not find that this loan was within and the other loans were without the scope of the agency. Additionally, we do not agree with the defendant that the 10½ percent interest rate is necessarily erroneous and that the applicable interest rate is the statutory rate. See footnote 4, supra. Nonetheless, because the cross appeal challenges the judgment for the plaintiff in the amount of $26,368.07, and because of our disposition of the appeal on the same issue, we are constrained to find error in part on the cross appeal.

There is error on both appeals, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.