[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (#124 AND #129)
By a one count complaint dated May 19, 1998, the plaintiff, Frank J. La Teano, Jr., brought this action against the defendant, Hartford Life Insurance Company (Hartford Life), alleging breach of contract for failure to pay the plaintiff's claim pursuant to the provisions of a term life insurance policy issued by Hartford
Life to the plaintiff as owner and beneficiary. Hartford Life filed a second amended answer including three special defenses and a two count counterclaim dated September 2, 1999. Count one of the counterclaim alleges that Hartford Life is entitled to rescind the policy on the ground that the plaintiff made knowing and material misrepresentations of fact on the policy application. Count two alleges that the policy is unenforceable on the ground that the plaintiff lacked an insurable interest. In response to the counterclaim, the plaintiff filed three special defenses, dated October 18, 1999, alleging that Hartford Life is barred by the doctrines of laches, estoppel and/or waiver from asserting either rescission or unenforceability of the policy.
On November 5, 1999, Hartford Life filed a motion for summary judgment on the ground that there are no genuine issues as to any material fact regarding its claim of material misrepresentation and that it is entitled to a judgment of rescission as a matter of law. The plaintiff filed an CT Page 7697 opposition memorandum dated December 6, 1999, arguing that genuine issues of material fact exist as to his special defenses of laches, waiver and estoppel. The plaintiff also filed a cross motion for partial summary judgment asserting that he is entitled to judgment as a matter of law as to the counterclaim for rescission on the ground that the policy application is ambiguous and therefore must be construed against the insurer.
The following relevant facts are undisputed. Throughout the period relevant to this action, from approximately 1989 though 1997, the plaintiff, through his business, together with various other entities, sponsored an amateur softball team known over the years by different names but most recently as Ritch's Superior/Tn Gems Softball (Ritch's Superior). In 1991, a premier softball player named Dirk Androff joined Ritch's Superior.
In 1995, to provide an incentive to Androff to remain with Ritch's Superior, the plaintiff sought to obtain an insurance policy which would serve the dual purposes of providing deferred compensation and life insurance to Androff. To this end, the plaintiff consulted Vincent Spera, the owner of The Suranna Agency, Inc., doing business as Spera Colli-Suranna Insurance (Colli-Suranna), to obtain a Modified Flexible Premium Variable Life Insurance Policy. Spera and the plaintiff have a long-standing personal and business relationship beginning in the mid-1980s when Spera purchased Colli-Suranna from the plaintiff. In the many years since then, Spera and the plaintiff have been partners, for example, in various commercial real estate ventures together. In addition, the plaintiff has invoked Spera's professional services on numerous occasions in procuring policies, issued by various insurance companies, for the plaintiff's personal and business insurance needs, including auto, life, medical, umbrella, liability, property and casualty insurance.
Spera is a party to a "Sales Agreement" with Hartford Life which authorizes him to solicit and take applications for policies issued by Hartford Life. The plaintiff, as the owner and beneficiary, and Androff, as the insured, agreed to apply for the policy at issue in this case from Hartford Life.
On October 8, 1995, Spera and Androff met in Florida to complete the portions of the Application for the policy directed to the insured. Spera asked Androff each question and accurately and contemporaneously recorded each of Androff's answers on the Application. In particular, Part C of the Application, entitled, "HAZARDOUS ACTIVITIES OF PROPOSED INSURED(S)," consists of Question 10, which, in turn, contains twelve subsections listed as 10.a. through 10.1. Question 10.b. asks of the proposed CT Page 7698 insured, "Have you ever been convicted of a felony or misdemeanor other than a minor traffic violation?" Spera checked the "NO" box, indicating that this was Androff's response to this question. After completing the Application, Androff signed the Application in Spera's presence.
In early December 1995, Spera and the plaintiff met to complete those portions of the Application directed to the proposed owner/beneficiary. As he had done with Androff, Spera asked the plaintiff each question directed to the owner/beneficiary and recorded the answers. Spera then gave the Application, which at that time included the portions already completed by Androff, to the plaintiff for his review and signature. The plaintiff, without reading the Application, signed the Application in Spera's presence.
The Application was submitted to Hartford Life, and in reliance thereon, Hartford Life issued a Modified Flexible Premium Variable Life Insurance Policy effective February 6, 1996. The initial face amount of the policy was $500,000. Subsequent to March 21, 1997, however, the plaintiff failed to pay the premiums due on the policy. Due to the nonforfeiture provisions of the policy, the policy was continued as extended term insurance in the amount of $505,614.41 through May 29, 2003.
On October 27, 1997, Androff died. On October 29, 1997, the plaintiff submitted a claim to Hartford Life for payment of the death benefit pursuant to the terms of the life insurance policy. Upon investigation of the plaintiff's claim, Hartford Life discovered that on November 9, 1993, Androff was convicted in the Circuit Court of the 12th Judicial District, in and for Manatee County, Florida, of the felony of solicitation of a child by a person in familial/custodial authority and was fined and sentenced to a term of three years of probation. The conviction stemmed from Androff's unlawful sexual conduct with a 17-year-old female student at the high school where Androff was a teacher. Androff was still serving his term of probation on October 8, 1995, when he met with Spera for the purposes of completing the Application. Because of the "NO" response to Question 10.b., which asked, "Have you ever been convicted of a felony or misdemeanor other than a minor traffic violation?", Hartford Life determined that the Application contained a material misrepresentation, and by letter dated December 27, 1997, notified the plaintiff of its rescission of the policy. This lawsuit followed. Additional facts are provided below as needed.
 I Standard CT Page 7699
The standards governing a motion for summary judgment are well established. Practice Book § 17-49 "provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Miller v. United Technologies Corp., 233 Conn. 732, 744-45,660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430,434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, 746 A.2d 753 (2000). In ruling on a motion for summary judgment, "[t]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) Fleet Bank, N.A. v. Galluzzo,33 Conn. App. 662, 666, 637 A.2d 803, cert. denied, 229 Conn. 910,642 A.2d 1206 (1994).
 II Material Misrepresentation
Hartford Life moves for summary judgment on the ground that it is undisputed that the plaintiff and Androff[1] knowingly misrepresented a material fact, namely, the status of Androff as a convicted felon, on the Application and that, therefore, Hartford Life is entitled to a judgment of rescission as a matter of law. Hartford Life offers affidavits, documentary evidence and the depositions of the plaintiff and Spera in support of its motion.
Under Connecticut law, "[a]n insurer has a right to rescind for a material misrepresentation on an insurance application if it is not an innocent misrepresentation, but one `known by the insured to be false when made.' Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 692,590 A.2d 957 (1991)." Paul Revere Life Ins. Co. v. Pastena,52 Conn. App. 318, 323, 725 A.2d 996, cert. denied, 248 Conn. 917,734 A.2d 568 (1999); see also Bristol v. Commercial Union Life Ins. Co.of America, 211 Conn. 622, 628, 560 A.2d 460 (1989). Specifically, the insurer must prove that the applicant made (1) a misrepresentation, or untrue statement, (2) knowingly and (3) that was material to the insurer's decision whether to insure. See Pinette v. Assurance Co. ofCT Page 7700America, 52 F.3d 407, 409 (2nd Cir. 1995); Mt. Airy Ins. Co. v.Millstein, 928 F. Sup. 171, 174 (D. Conn. 1996).
As for the first element, it is undisputed, and in fact fully admitted by the plaintiff, that the Application contains a misrepresentation. Both the plaintiff and Androff represented by the "NO" response to question 10.b. that Androff had never been convicted of a felony. The plaintiff admits that this response was untrue because at the time the Application was completed and signed Androff had been convicted of a felony and was still serving his term of probation. (Deposition of Frank J. La Teano, Jr., Vol. II, August 6, 1999 [La Teano Deposition], pp. 190-93; Plaintiff's October 18, 1999 Answer to Counterclaim, First Count, ¶ 9.)[2]
In regard to the second element, whether the misrepresentation was knowing, the plaintiff again fully admits that it was. The plaintiff admits that he knew that Androff had been convicted of a felony at the time the Application was completed and signed and that, therefore, the misrepresentation was known by him to be false when made. (La Teano Deposition, pp. 190-93.)
The plaintiff's claim that he did not read the Application is immaterial. An admitted failure to read or examine the application carefully [does] not excuse or cause the misrepresentation to be innocent." Paul Revere Life Ins. Co. v. Pastena, supra, 52 Conn. App. 324. "The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so. . . ." Ursiniv. Goldman, 118 Conn. 554, 562, 173 A. 789 (1934); see also Pinette v.Assurance Co. of America, supra, 52 F.3d 410 ("[A]n applicant for insurance has the affirmative duty `to inform himself of the content of the application signed by him, under penalty of being bound by the representations as recorded therein.'").
Finally, with respect to the third element, the misrepresentation is material as a matter of law. "There is no dispute that the statements and answers contained in an insurance application become part of that application and any contract of insurance issued on it, and that these statements and answers are material. State Bank Trust Co. v.Connecticut General Life Ins. Co., 109 Conn. 67, 70, 145 A. 565 (1929)."Paul Revere Life Ins. Co. v. Pastena, supra, 52 Conn. App. 323. "Where the representation is contained in an answer to a question contained in the application which is made a part of the policy the inquiry and answer are tantamount to an agreement that the matter inquired about is material. The information given forms the basis of the contract and CT Page 7701 defines the risk assumed. . . . Matters made the subject of special inquiry are deemed conclusively material." (Citations omitted; internal quotation marks omitted.) State Bank Trust Co. v. Connecticut GeneralLife Ins. Co., 109 Conn. 67, 70-71, 145 A. 565 (1929).
In addition to the foregoing, the undisputed evidence shows in fact that the misrepresentation is material. "A fact is material to the consideration of a contract of insurance when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium."Davis-Scofield Co. v. Agricultural Ins. Co., 109 Conn. 673, 677-78,145 A. 38 (1929). Thus, the court also concludes that the misrepresentation was material because the undisputed affidavit submitted by Hartford Life clearly shows that it would not have issued the insurance policy had it known that Androff was a convicted felon on probation at the time the Application was completed and submitted. (Affidavit of Steven Matthiesen, November 2, 1999, ¶ 25); see alsoPaul Revere Life Ins. Co. v. Pastena, supra, 52 Conn. App. 324.
The court finds that Hartford Life has sustained its burden of showing the absence of any genuine issues of material fact that regard to its claim of material misrepresentation. It is quite clear that the Application contains a knowing and material misrepresentation. The issue now is whether Hartford Life is entitled to a judgment of rescission as a matter of law. The plaintiff has asserted three special defenses, laches, waiver and estoppel, and argues that based on these defenses Hartford Life is not entitled to rescind the policy. The plaintiff further argues that disputed issues of fact exist with regard to these defenses that preclude summary judgment in favor of Hartford Life.
In addition to his special defenses, the plaintiff has filed his own motion for summary judgment as to Hartford Life's counterclaim for rescission on the ground that the Application is ambiguous and therefore to be construed against the insurer. Before turning to the plaintiff's special defenses, the court first addresses the ambiguity issue.
 III Ambiguity
It is undisputed in this case that Androff pleaded no contest to his felony charge. The plaintiff argues that "convicted" as it is used in Question 10.b. on the Application is ambiguous because a reasonable lay person could construe it as inquiring only as to adjudications of guilt by a judge or jury after a criminal proceeding in which the accused CT Page 7702 asserts his or her innocence, and not as inquiring about cases disposed of by guilty pleas or no contest pleas. The plaintiff moreover argues that the ambiguity in Question 10.b. is further emphasized by the immediately preceding Question 10.a. which asks, "Within the past 3 years, have you ever been convicted of, pleaded guilty or no contest to: (I). three or more moving violations and/or accidents? (H). driving under the influence of alcohol and/or drugs?" The plaintiff argues that while Question 10.a. identifies convictions, guilty pleas and no contest pleas as three separate, distinct types of adjudication, Question 10.b. refers only to convictions, making it reasonable for a lay person to conclude that the scope of inquiry of Question 10.b. excludes matters disposed of by no contest pleas. The plaintiff asserts that it is reasonable to conclude that Androff, because he pleaded no contest to his felony charge, had not been "convicted" of a felony. Therefore, the plaintiff seeks to invoke the rule that, due to the ambiguity of Question 10.b., the construction most favorable to the applicant should be given; seeImperial Casualty Indemnity Co. v. State, 246 Conn. 313, 325,714 A.2d 1230 (1998); rendering the "NO" response to Question 10.b. in fact true and preventing Hartford Life from rescinding. For the following reasons, the court affords no merit to the plaintiff's claim of ambiguity.
It is important to note that the plaintiff's ambiguity argument arises in the context of a claim of material misrepresentation to dispute the elements of that cause of action — that a false statement was made that was known to be false when made. A response does not amount to a misrepresentation unless it was known by [the applicant] to be false when made." Middlesex Mutual Assurance Co. v. Walsh., 218 Conn. 681, 693,590 A.2d 957 (1991). Logically, "[a] statement cannot be knowingly false, however . . . unless it is in fact false." Id. "Whether a response to a question in an insurance application is false must be determined in light of the question asked." Id. "[I]f the inquiry is so framed that it does not clearly inform the insured of its meaning, and he may have been honestly mistaken as to what was intended, and his answer, by fair and reasonable construction, may be considered a true one in response to the question as he understood it, such interpretation will be given, and a forfeiture precluded." (Internal quotation marks omitted.) Id., 694-95.
The court shares Hartford Life's frustration, given the plaintiff's unequivocal admissions that a knowing, material misrepresentation was made, over entertaining the plaintiff's claim raised now that one was not. Hartford Life points out that the plaintiff's ambiguity argument is entirely inconsistent with the plaintiff's judicial and evidentiary admissions made since the institution of this action. In particular, in response to the allegations of Hartford Life's counterclaim, the plaintiff admits "that a judgment of conviction was entered against Dirk CT Page 7703 Androff by a court in Manatee County Florida for solicitation of a child by a person in familial/custodial authority and sentenced to three years probation. . . ." (Emphasis added.) (Plaintiff's October 18, 1999 Answer to Counterclaim, First Count, ¶ 9.) Moreover, the plaintiff affirmatively pleads the facts that he "told V. Spera that Dirk Androff had previously been arrested and convicted for a crime" and that Spera had information about the conviction of the insured Dirk Androff. . . ." (Emphasis added.) (Plaintiff's October 18, 1999 Matters in Avoidance and Special Defenses, ¶¶ 4-5.) The court agrees that necessarily implicit in these factual admissions of Androff's "conviction" is the factual admission that Androff's plea of no contest is a "conviction."[3]
"Factual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." Dreier v. Upjohn Co., 196 Conn. 242, 248, 492 A.2d 164
(1985). The plaintiff is bound by his judicial admissions, and arguments to the contrary refuting such are impermissible. See id.
At the outset, the court agrees that it is disingenuous for the plaintiff to raise by argument in memoranda for the first time a claim attempting effectively to eviscerate his unequivocal, judicial and evidentiary admissions consistently maintained throughout the pendency of the action, namely, that Androff was a convicted felon, that the representation made in the Application was false and that such representation was known by him to be false when made. Indeed, at oral argument on the present motion, the court understood that it was in large part due to the undisputed nature of these facts that the court, Berger,J., during the pretrial conference suggested summary judgment as an appropriate method to dispose of this action. The issue of ambiguity was not raised at the pretrial conference and in fact had never been raised as an issue in this case. Hartford Life did not address ambiguity in its motion for or memorandum in support of summary judgment and represented to the court that it became aware of the issue when the plaintiff raised it for the first time by argument in his opposition memorandum, igniting on both sides another round of briefing.
Moreover, it appears from all the pleadings and evidence submitted that the plaintiff's position has never been to dispute Hartford Life's claim that the Application contains a material misrepresentation, but has instead been to defend against rescission through assertion of the special defenses of laches, estoppel and waiver. It is of no small significance that the plaintiff's brief in opposition to the motion for summary judgment, aside from the ambiguity argument, contains no other argument addressed to or disputing the fact of material misrepresentation. When asked directly by the court at oral argument as to when the issue of ambiguity arose, the plaintiff's counsel answered quite honestly, "When I thought of it." Although the court can appreciate CT Page 7704 zealous advocacy on behalf of a client, the untimely raising of the issue, the procedural method by which it was raised and the fact that a claim of ambiguity is inconsistent with the plaintiff's unequivocal judicial and evidential admissions all lend support to the conclusion that ambiguity is not a bona fide issue in this case but is instead lawyer-contrived.
In now claiming that the representation made is not in fact false and knowingly made, the plaintiff apparently recognizes the need to resolve the inconsistency of his unequivocal admissions to the contrary. He attempts to accomplish this by arguing that whether the Application question is ambiguous is to be ascertained by an objective standard, and, thus, the plaintiff's subjective construction of the question is irrelevant. The court disagrees.
Even if the court were to determine that Question 10.b. is ambiguous, this does not, however, end the inquiry in favor of the plaintiff under the circumstances of this case. "Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question . . . construction of a contract of insurance presents a question of law. . . ." (Internal quotation marks omitted.) Imperial Casualty Indemnity Co. v. State, supra, 246 Conn. 325. "It is a well-established rule of law that the construction placed upon a contract by the parties as evidenced by acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning. . . ." State ex rel. NorthwesternMutual Life Ins. Co. v. Bland, 189 S.W.2d 542, 549 (Mo. 1945); see alsoContinental Assurance Co. v. Conroy, 209 F.2d 539, 542 (3d Cir. 1954) ("well-established principle that in construing an ambiguous contract [of insurance] the conduct of the parties . . . is to be considered in determining its meaning and is persuasive evidence of the actual, practical construction which the parties have placed upon the contract and its meaning"); Tinker v. Continental Ins. Co., 410 A.2d 550, 553-54
(Me. 1980) (where policy ambiguous, parties' intent must not be frustrated "when the parties, by their acts, have placed a construction on the contract showing what was, in fact, intended"). "The rule of strict construction, therefore, is a rule of last resort which must not be permitted to frustrate the intention the parties have expressed, if that can otherwise be ascertained." Tinker v. Continental Ins. Co., supra, 554; see also State ex rel. Northwestern Mutual Life Ins. Co. v.Bland, supra, 549 ("[W]here an ambiguity in an insurance policy has been removed by the construction of the parties there is no room for the application of the rule a policy must be construed strictly against the insurer."); 2 Couch, Insurance (3d Ed. 1997) § 22:14 (same); 2 Couch, Insurance, supra, § 22:16 ("[S]ince rule of strict CT Page 7705 construction of an ambiguous policy against insurer is a rule of last resort, and not to be permitted to frustrate parties' expressed intention if such intention could be otherwise ascertained, where there is extrinsic evidence of parties' intention, which is [proffered] and admissible, and which resolved ambiguity, albeit in favor of non-coverage, the rule of strict construction need not be applied.").
The undisputed evidence in this case, including the admissions of the plaintiff, unequivocally establishes that the actual understanding of the parties as to the meaning of the term "convicted" as used in Question 10.b. was mutual. All parties interpreted the scope of the question to include inquiry of convictions after pleading no contest. Therefore, in the event of ambiguity, it is this construction, which the parties themselves gave to the question, that the court would apply. See State exrel. Northwestern Mutual Life Ins. Co. v. Bland, supra, 189 S.W.2d 549. Thus, because any ambiguity was resolved by the mutual understanding of the parties to this action, there is no occasion to apply the rule of strict construction against Hartford Life. See id.; see also Tinker v.Continental Ins. Co., supra, 410 A.2d 554. Applying this construction, the answer to Question 10.b. is undisputedly false, as admitted by the plaintiff.
For the foregoing reasons, the court finds the issue of ambiguity in favor of Hartford Life. The plaintiff's motion for summary judgment is therefore denied.
 IV Laches, Estoppel and Waiver
The court now turns to the issue of whether disputed issues of fact remain as to the plaintiff's special defenses precluding summary judgment in favor of Hartford Life on the issue of material misrepresentation. The factual predicate underlying each of the plaintiff's special defenses of laches, estoppel and waiver is as follows.
In the middle of the summer of 1997, approximately eighteen months after the Application was completed and submitted, and three to four months prior to Androff's death on October 27, 1997, Spera telephoned Robert Sisti, a marketing representative from another insurance company for the business purpose of obtaining a quote for group medical insurance. Sisti, a softball player himself and aware of Spera's familiarity with Androff, told Spera that Sisti had heard at a recent softball tournament that Androff had been arrested for being involved with a young girl. (Deposition of Vincent W. Spera, November 14, 1998 [Spera Deposition], p. 111.) Spera testified that his reaction to this CT Page 7706 information from Sisti was that "I thought that he may have his facts mixed up, because right around that same time at one of the games they had had a fist fight, a brawl, the dugouts emptied, and I understand that a couple of guys started swinging and some people were hurt and some people were arrested. And so I thought that that's what he may have been talking about." (Spera Deposition, p. 111.) During this conversation, which lasted approximately one to two minutes in its entirety, Sisti provided no other details to Spera. Spera testified that his impression after his conversation with Sisti was that Androff's arrest was a recent, present occurrence. (Spera Deposition, pp. 164-65.)
Approximately one to two weeks later, Spera telephoned the plaintiff for the business purpose of discussing the renewal of the plaintiff's property and casualty insurance policy placed with another insurance company. The subject of the brawl came up during this conversation, and Spera relayed to the plaintiff the information he had received from Sisti regarding Androff's arrest. The plaintiff confirmed that Androff had in fact been arrested but for a reason unrelated to the brawl — that the arrest was related to a young girl. Spera testified that once again his impression regarding this information from the plaintiff was that Androff's arrest had been a recent occurrence, something that had occurred over the past several weeks or months. (Spera Deposition, p. 170.) The plaintiff provided no other details to Spera. Spera did not inform any officer or employee of Hartford Life of the information he had received from Sisti or the plaintiff regarding an arrest involving Androff.
The plaintiff claims that Spera's knowledge of Androff's criminal history obtained in the above discussed manner should be imputed to Hartford Life such that Hartford Life is now barred by the doctrine of laches, estoppel and waiver from rescinded the policy because of it failure to act promptly in exercising it right of rescission.
"[G]enerally, notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal." (Internal quotation marks omitted.) E. Udolf, Inc. v. Aetna Casualty Surety Co., 214 Conn. 741, 745-46, 573 A.2d 1211 (1990); see also WestHaven v. United States Fidelity Guaranty Co., 174 Conn. 392, 395,389 A.2d 741 (1978); Reardon v. Mutual Life Ins. Co., 138 Conn. 510,516, 86 A.2d 570 (1952); O'Connor v. Metropolitan Life Ins. Co.,121 Conn. 599, 606, 186 A. 618 (1936). The scope of an agent's authority is dependent upon the construction of any contract creating the agency, the purpose of the agency and the circumstances existing at the time of its creation. See Bank of Montreal v. Gallo, 3 Conn. App. 268, 273-74,487 A.2d 1101 (1985). Thus, "[t]he nature and extent of an agent's CT Page 7707 authority is a question of fact for the trier." E. Udolf, Inc. v. AetnaCasualty Surety Co., supra, 214 Conn. 749. "Where the evidence is conflicting or where there are several reasonable inferences which can be drawn, the nature and extent of an agent's authority is a question of fact for the trier of facts." West Haven v. United States Fidelity 
Guaranty Co., supra, 174 Conn. 395-96.
Hartford Life calls attention to the provision contained in the Application to which, by signing, the plaintiff agreed "that only an Officer of the Company may alter the terms of the application, the Conditional Receipt or the policy, or waive any of the Company's rights or requirements." Hartford Life argues that this provision precludes the plaintiff from claiming waiver based upon the actions or representations of Spera. This provisions, however, is irrelevant to the issue of imputed knowledge. See Reardon v. Mutual Life Ins. Co., supra, 138 Conn. 517
(where court dismissed similar argument made by insurer with regard to similar provision). The plaintiff's claim made here is not that Spera himself waived the misrepresentation but that Hartford Life did by not acting after knowledge of the misrepresentation came their attention, such knowledge being imputed to it by way of their agent. See id.
Hartford Life next argues that even if Spera's knowledge is imputable to Hartford Life, Spera did not acquire relevant information within the scope of his authority. "The rule that the knowledge of an agent is imputed to the principal applies only to such knowledge as was acquired by the agent during the existence of the agency. . . ." L. C. Bates Co.v. Austin, Nichols Co., 143 Conn. 392, 394-95, 122 A.2d 795 (1956). Thus, the question of whether the knowledge of a particular agent may be imputed to the insurer is affected by the character of the agent. See 3 Couch, Insurance, supra, § 49:18. "[I]f the agent's powers with respect to insurance terminate when the negotiations are completed, as in the case of an agent who only has authority to take applications and deliver policies, knowledge concerning the risk coming to the agent after the contract has been completed is not imputed to the principal. . . ." Id. For example, it is generally held that the authority of a mere "soliciting agent," with authority to solicit applications, deliver policies, and accept first premiums, ends upon issuance of the policy such that knowledge obtained by the agent after the policy is issued may not be imputed to the insurer. See State Mutual Life Assurance Co. v.Schultz, 111 F.2d 1009, 1012 (9th Cir. 1940); Hare Chase, Inc. v.National Surety Co., 49 F.2d 447, 457-58 (S.D.N.Y. 1931), aff'd,60 F.2d 909 (2d Cir.), cert. denied, 287 U.S. 662, 53 S.Ct. 222,77 L.Ed. 572 (1932); Southern States Life Ins. Co. v. Dunckley, 148 So. 320,323 (Ala. 1933); Green v. Phoenix Ins. Co., 247 N.W. 660, 662 (Iowa 1932). CT Page 7708
The court finds that the nature and extent of Spera's agency is not so clearly settled as to allow the court to determine the issue of imputed knowledge as a matter of law. Issues of fact remain to be determined regarding the scope and subject matter of Spera's authority, such as, whether Spera's agency had terminated at the time he learned of the arrest, or whether the relationship between the parties warrants an inference of the continuance of the agency, and whether the information received was within the scope of his authority and whether it pertained to a matter over which his authority extended. Spera's deposition testimony is inconclusive with respect to the scope of his agency, and he himself expresses uncertainty as to its precise nature. (Spera Deposition, pp. 116-117.) "Where the evidence is conflicting or where there are several reasonable inferences which can be drawn, the nature and extent of an agent's authority is a question of fact for the trier of facts." West Haven v. U.S. Fidelity Guaranty Co., supra,174 Conn. 395-96.
Hartford Life also argues that the quality of information obtained by Spera was insufficient to apprise him and, consequently, Hartford Life, of the fact of Androff's conviction. Whether the information received was of such substance and quality as to of fact which remain to be determined. The court finds that these issues are not so clearly settled as to allow the court to decide them as a matter of law.
Finally, Hartford Life argues that the plaintiff's special defenses of laches, estoppel and waiver must fail because the plaintiff cannot establish certain elements of these defenses. For example, Hartford Life claims that there is no evidence that it engaged in any conduct that would lead the plaintiff to believe it would not exercise its right to rescind the policy or that the plaintiff changed his position in reliance thereon or was prejudiced by any delay.
The essence of the plaintiff's claim, however, is that Hartford Life, through imputed knowledge, had information sufficient to apprise it of its right to rescind the policy. Having failed to exercise its right within a reasonable time after receipt of such information, the plaintiff argues, the plaintiff has been prejudiced in that, had Hartford Life promptly rescinded the policy, the plaintiff would have and could have obtained replacement insurance before Androff's death. There is evidence to support this claim. (See Affidavit of Frank J. La Teano, Jr., February 15, 2000, ¶¶ 2-4; Affidavit of William J. O'Sullivan, December 6, 1999, Exhibits A and B.) Because of this, and because issues of fact remain as to whether Hartford Life's delay was unreasonable under the circumstances, Hartford Life fails to establish that it is entitled to judgment as a matter of law. CT Page 7709
 CONCLUSION
The court therefore concludes that, because disputed issues of material fact exist with regard to the sufficiency of the plaintiff's special defenses to defeat a claim for rescission, Hartford Life's motion for summary judgment is denied. Additionally, for the reasons given above, the plaintiff's motion for summary judgment is denied.
Hennessey, J.
 APPENDIX A
The relevant portions of the plaintiff's deposition testimony upon which the court relies in
rendering this decision are as follows:
"Q. And I'm directing your attention to question 10-B which says, "have you ever been convicted of a felony or misdemeanor other than a minor traffic violation? If yes, explain." Do you see that?
"A. Yes.
"Q. And the proposed insured, that's Mr. Androff is that correct?
"A. That's correct.
"Q. Has indicated and it's been checked no; is that correct?
"A. Yes, it is.
"Q. Okay. Now, based on your testimony yesterday I gather you would agree with me that that's a false answer in response to that question; isn't that correct?
"A. That's correct.
"Q. That in fact, Mr. Androff had been convicted of a felony; isn't that correct?
"A. Yes, it is.
"Q. And not only had he been convicted on a felony, but as of the time of the submission of this application he was still on probation for that felony; isn't that correct? CT Page 7710
"A. Yes.
"Q. And you knew that?
"A. I knew that he was convicted of a felony, yes.
"Q. And you knew that as of the time of the submission of this application?
"A. Yes, I did.
. . .
"Q. And notwithstanding that fact, you signed the application with that answer to that question certifying that the statements and answers contained in the application were complete and true to the best of your knowledge and belief; isn't that true?
"A. That's correct.
"Q. And in fact, that answer wasn't true; isn't that correct?
"A. Yes, that is correct.
"Q. And you indicated that those — that the answers to the questions would be the basis for the issuance of the policy; isn't that correct?
"A. Yes. Yes.
"Q. And you signed with that purpose. And, in fact, that answer was false?
"A. Yes.
"Q. Okay. Now, I think you indicated that you're not sure whether you read the policy at the time you signed it; is that correct? You don't remember one way or the other?
"A. I can tell you that part. This was presented to me and I signed it and I have no — and I would have signed it the same way whether it was done before or after.
"Q. Okay.
"A. I would have just signed it because those questions and answers, I CT Page 7711 mean, really were not part of my makeup. I know what you're supposed to do, but I didn't. I didn't read anything. I just signed it. Viny handed it to me, I signed it.
"Q. And I'm not — we're not dealing with the — I'm merely — I guess what you've just said is you knew that it was your obligation in certifying that the questions and answers were correct to see that they were correct; isn't that true?
"A. That's correct. Yes.
"Q. And whether you lived up to that obligation or not it doesn't sound like maybe you read the application, correct?
"A. I didn't.
"Q. You probably wish you had now, correct?
"A. Yeah. I knew all of those answers.
"Q. Right. But there's no question but that the answer to that question was false; is that correct?
"A. The 10-B there?
"Q. 10-B.
"A. No.
"Q. No question about it?
"A. No question about it.
"Q. And had you read it you would have known that the answer to that question would have to be yes; isn't that correct?
"A. Yes."
(Deposition of Frank J. La Teano, Jr., Vol. II, August 6, 1999, pp. 190-93.)